IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ENCOMPASS INSURANCE COMPANY | § | |
| | § | |
| v. | § | CASE NO. 6:09-CV-460 |
| | § | |
| W. MICHAEL HILL and SUSAN HILL | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiff's Motion for Summary Judgment (Doc. No. 35). Having considered the motion, the responsive briefing, and the applicable law, the motion is DENIED.

**I.     BACKGROUND**

This action presents a dispute between the former home owners of the insured property and the insurance company that issued their home owners insurance policy. Defendants Michael and Susan Hill purchased a home owners policy from Plaintiff Encompass Insurance Company to cover a home they were building. The Hills ultimately sold the home to third parties Brad Murphy and Alma Galindo Murphy for approximately $1.3 million.

The Murphys sued the Hills in state court (the Underlying Action), alleging a number of defects to the home. The Murphys asserted the following claims: (1) fraud in real estate and stock transaction, (2) violations of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA), (3) breach of express warranties, (4) breach of implied warranties, (5) negligence, (6) gross negligence, (7) breach of contract, and (7) rescission.

Encompass defended the Hills in the Underlying Action under a reservation of rights. Following a bench trial in the Underlying Action, the Murphys prevailed on several of their claims, specifically on the DTPA, contract, and warranty claims. The state court awarded the Murphys $98,644.18 in actual damages.

Relying on the findings of fact and conclusions of law issued by the state court, Encompass seeks a declaration from this Court that Encompass does not have a duty to indemnify the Hills for the damages awarded in Underlying Action. Encompass asserts that the damages fall outside the scope of the home owners policy. The Hills counter that fact issues exist regarding whether the damages fall under the policy.

## II.     LEGAL STANDARD

The Court should grant a motion for summary judgment if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008). A fact is material if it might affect the outcome of the suit under the governing law. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon*, 560 F.3d at 326. When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Sossamon*, 560 F.3d at 326.

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation omitted). If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response. *Id.* (internal quotation omitted). If the movant meets the burden, however, Rule 56 requires the opposing party to go beyond the pleadings and

show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 586–87; *U.S. ex rel. Farmer*, 523 F.3d at 337; *Duffie*, 600 F.3d at 371.

### III. ANALYSIS

Encompass maintains that the damages awarded in the Underlying Action fall outside the scope of the homeowners policy and asks the Court to grant summary judgment in favor of Encompass. The insurance company sets forth four justifications why the damages are not covered by the policy. First, Encompass argues that the policy's insuring agreement does not extend to the damages awarded because the damages did not result from an "occurrence" as defined by the policy. Second, Encompass claims that the damages were economic damages—which are not covered by the policy—rather than property damage. Third, the intentional acts exclusion precludes recovery under the policy. Finally, the damages were the result of business activity and thus are excluded from coverage. The insureds counter each of Encompass's argument. The insureds also suggest that the policy is ambiguous.

Under Texas law, the insured bears the burden to prove the insured's duty to indemnify by demonstrating that the facts invoke coverage. *Nat'l Union Fire Ins. Co. of Pitt. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008) (*Puget I*). The insurer bears the burden to prove the applicability of any exclusions. *Id.* at 404. Although this Court is bound by the findings in the Underlying Action, "[t]he underlying case often does not resolve all the factual issues

necessary to determine coverage because issues relevant to the question of coverage can be irrelevant to the question of the insured's liability." *Puget I*, 532 F.3d at 404. When the Underlying Action does not provide all of the facts necessary to determine coverage, the parties may present additional evidence in the coverage action. *Id.*

    **a. Occurrence**

Encompass first argues that the insuring agreement does not cover the damages because they did not result an "occurrence" as required by the policy. For the reasons set forth below, the Court disagrees.

The insuring agreement includes coverage for personal liability "[i]f a claim is made or a suit is brought against an **insured** for damages because of bodily injury or property damage caused by an occurrence to which the coverage applies." The policy further defines an "occurrence" as "an accident, including exposure to conditions, which results in **bodily injury** or property damage during the policy period."

Encompass argues that in the Underlying Action, the state court found the insureds guilty of misleading and deceptive practices, failure to comply with the contract, and warranty violations. Relying on a series of Texas appellate court cases dating from 1966 to 1998, Encompass argues that the only cause of action that might have equated to an occurrence was the negligence claim. But the state court ruled in favor of the insureds on the negligence claim. Accordingly, Encompass concludes that the underlying judgment was not based on an "occurrence."

The insureds respond that the state court did not find that they acted knowingly or intentionally. Instead, The insureds argue that this remains a fact issue to be resolved by this Court. The Court agrees.

Encompass relies heavily on *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex. App.—Fort Worth 1996, writ denied). In *Kessler*, the insureds sold their home to another couple. *Id.* at 734. After the sale, the purchasers sued the insureds, alleging DTPA, contract, and warranty violations. *Id.* Specifically, the purchasers alleged that the insureds misrepresented that the property had no drainage or foundation problems. *Id.* Further, the purchasers alleged that the insureds knew the representations were false. *Id.* The Fort Worth court held that this was not an occurrence, stating that "when the insured's acts are involuntary and intentional, the results or injuries, even if unexpected, are not caused by an 'accident,' and therefore the event is not and 'occurrence' under the policy." *Id.* at 738 (citations omitted).

But in *Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, the Supreme Court of Texas clarified the "generally accepted or commonly understood meaning" of "accident." 242 S.W.3d 1, 8 (Tex. 2007). The Court listed three categories that fall outside the definition of "accident": (1) intentional torts; (2) when the insured intended the injury, or (3) when the resulting injury was "highly probable" because it was "the natural and expected result of the insured's actions." *Id.* at 8–9; *Puget I*, 532 F.3d at 402.

Encompass emphasizes that the state court found the insureds guilty of false, misleading, or deceptive acts and failing to comply with the warranty and sales contract. But violations of the Texas Deceptive Trade Practices Act (DTPA) are not intentional torts and do not necessarily establish that the insureds intended the harm or that the harm was highly probable. *Puget I*, 532 F.3d at 402; *Mid-Continent Cas. Co. v. Brock*, 451 F. App'x 335, 339 (5th Cir. 2011) (per curiam). Similarly, contract and warranty violations could be accidental under *Lamar Homes*. *See Lamar Homes*, 242 S.W.3d at 8. Absent specific findings on those issues in the Underlying Action, a factual issue exists as to whether damages resulted from an "occurrence." *Puget I*, at

402–03. Here, the Underlying Action includes no such findings. Accordingly, a fact issue exists, and summary judgment is denied as to this issue.

### b. Property damage

Encompass again relies heavily on *Kessler* to argue that the damages claimed by the insureds are economic, rather than property damages. The policy defines "property damage" as "injury to, destruction of, or loss of use of property." Encompass reasons—similarly to the Court in *Kessler*—that because the state court only found the insureds guilty of DTPA, contractual, and warranty violations, the damages awarded in the Underlying Action do not qualify as property damages.

The court in *Kessler* followed this same reasoning. The *Kessler* court stated that while the purchasers described drainage and foundation problems in their complaint against the insureds, they "do not assert that the [insureds] injured the property, destroyed the property, or caused the resulting loss of use." *Kessler*, 932 S.W.2d at 737. Instead, the purchasers alleged that the insureds "misrepresented the problems." *Id.* According to the *Kessler* court, these misrepresentations led to economic damages, such as repair costs. *Id.* The court continued that "[i]n Texas, economic damages are not property damages as defined by liability insurance policies." *Id.*

But more recently, the Supreme Court of Texas has declared that "[t]he economic-loss rule . . . is not a useful tool for determining insurance coverage." *Lamar Homes*, 242 S.W.3d at 12. The Supreme Court further stressed in *Lamar Homes* that "the label attached to the cause of action—whether it be tort, contract, or warranty—does not determine" the duties under the insurance contract. *Id.* at 13. "The proper inquiry is whether an 'occurrence' has caused

'property damage,' not whether the ultimate remedy for that claim lies in contract of tort." *Id.* at 16.

Furthermore, the facts in this case more closely resemble those in *Lamar Homes*, where the insured was found responsible for the construction flaws, rather than *Kessler*, where the claims against the insureds only arose from false representations. Thus, to the extent *Kessler* is still good law,[1] the reasoning in *Lamar Homes* is more applicable under the facts of this case.[2]

Accordingly, the Court finds that a fact issue exists as to whether there was property damage caused by an occurrence. The motion for summary judgment is denied as to this issue.

### c. Intentional Act Exclusion

Encompass also argues that the state court found that the insureds acted intentionally. Thus, according to Encompass, the damages awarded fall under the Intentional Act Exclusion. The insureds respond that the state court did not make a factual finding regarding whether their actions were intentional, thus a fact issue exists. The Court agrees that a fact issue exists.

The insurer bears the burden to demonstrate the applicability of a policy exclusion. *See Puget I*, 532 F.3d at 404. Encompass's argument as to this exclusion mirrors its argument that the damages did not result from an accident, and thus were not an "occurrence" under the policy's General Insuring Agreement. For the reasons discussed above, the Court finds that a fact issue exists as to whether the insureds acted intentionally. *See* discussion *supra* Part III.a.

---

[1] *See Sigma Marble & Granite—Hous., Inc. v. Amerisure Mut. Ins. Co.*, No. CIV. A. H-09-3942, 2010 WL 5464257, at *9 n.53 (S.D. Tex. Dec. 28, 2010) (dismissing the *Kessler* in view of current Texas Supreme Court case law).
[2] The Court recognizes that *Lamar Homes* involves a commercial general liability (CGL) policy, while this case involves a homeowner's policy. But the general insuring language that describes "occurrence" and "property damage" is substantially the same in both policies. Thus, the same reasoning applies. Further, Encompass's argument that the Business Activities Exclusions applies in this case is addressed below.

### d. Business Activities Exclusion

Encompass next argues that coverage should be denied under the Business Activities Exclusion. The insureds respond that the facts do not implicate this exclusion. For the reasons discussed below, the Court finds that a fact issue exists on this issue.

As the insurer, Encompass bears the burden to demonstrate that this exclusion applies. *See Puget I*, 532 F.3d at 404. Under Texas Law, the Court considers two elements to assess the applicability of this exclusion: "(1) continuity or regularity of the activity, and (2) a profit motive, usually as a means of livelihood, gainful employment, earning a living, procuring subsistence or financial gain, a commercial transaction or engagement." *Allstate Ins. Co. v. Hallman*, 159 S.W. 3d 640, 644 (Tex. 2005) (adopting *Unites Servs. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 778–80 (Tex. App.—San Antonio 1991, writ denied)).

Encompass relies on the state court's finding that insured Michael Hill was a "builder" under the Texas Residential Construction Commission Act and a "contractor" under the Texas Residential Construction Liability Act. But these findings in the Underlying Action do not speak to the elements relevant to the Business Activities Exclusion. Accordingly, a fact issue exists as to this exclusion.

### e. Ambiguity in the Policy

The insureds also cite case law requiring ambiguities in the policy be construed in favor of the insured. But The insureds have not pointed out any ambiguities in the policy. "An insurance policy's terms are unambiguous if they have definite and certain legal meaning." *Travelers Lloyds Ins. Co. v. Pacific Employers Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010). Disagreement between the parties as to the meaning does not establish an ambiguity. *Id.* Further,

unambiguous terms must be given their plain meaning. *Id.* The insureds have not demonstrated an ambiguity, thus the plain meaning applies.

### IV. CONCLUSION

For the reasons discussed more fully above, the Court DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 35).

The Court will resolve the following issues[3] at trial:

(1) Whether the injury was intended by the insureds or highly probable based on their activity (Issues: Occurrence and Intentional Acts Exclusion);

(2) Whether the damages constitute injury to, destruction of, or loss of use of property (Issue: Property Damage);

(3) Whether the insureds' activity invokes the Business Activities Exclusion, specifically looking to the continuity or regularity and profit motive of their activity;

(4) If applicable, the amount of damages recoverable under the policy; and

(5) If applicable, the costs and expenses incurred by the prevailing party.

---

[3] The Court may also address any other factual or legal issues that become apparent.

*Furthermore, the pretrial conference in this hearing is reset to Wednesday, March 13, 2013 at 2:00 p.m. in Tyler, Texas. The case will proceed immediately to trial following the pretrial conference. The parties shall exchange exhibits pursuant to paragraph 12 of the Scheduling and Discovery Order (Doc. No. 40) by March 11, 2013. All other deadlines not modified by this order remain in place.*

  It is SO ORDERED.

  SIGNED this 12th day of February, 2013.

                _____
                MICHAEL H. SCHNEIDER
                UNITED STATES DISTRICT JUDGE